# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **CHRISTOPHER LOPEZ,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **INTERESSE INTERNATIONAL INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT AND JURY DEMAND

### I.    INTRODUCTION

1.

This is a civil rights case to enforce Plaintiff Christopher Lopez's ("Plaintiff") rights under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") for race discrimination and retaliation by his former employer, Interesse International, Inc. ("Defendant").

2.

As an employer under Section 1981, it is unlawful for Defendant to discriminate against an employee due to race or in retaliation for making a complaint of race discrimination.

## II.   JURISDICTION AND VENUE

3.

The Court has jurisdiction over this action pursuant to 28 U.S.C.. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Section 1981.

4.

Venue is proper in this district and division pursuant to 28 U.S.C. § 1391 and O.C.G.A. § 14-3-510(b)(1) because Defendant is a foreign corporation with its registered office in Roswell, Fulton County, Georgia, which is in this district and division.

5.

Defendant may be served with process on its registered agent, Axis Research, 900 Old Roswell Lakes Parkway, Suite 310, Roswell, Georgia, 30076.

## III.   PARTIES

6.

Plaintiff is a white male citizen and a resident of Cobb County, Georgia.

7.

Defendant is a leading global recruitment and staffing placement agency for companies located in the United States, and for companies doing business between the United States and Japan.

## IV.   STATEMENT OF FACTS

8.

Defendant has conducted business in the U.S. since June 1996, reports under 50 employees, and an annual revenue of $20 Million.

9.

Defendant is headquartered in New York City, and has approximately twelve branch offices nationwide.

10.

In June 2003, Defendant opened its Atlanta based office.

11.

The Defendant's CEO, COO and Secretary is Mr. Masato Fujihara, who keeps his office at the New York City headquarters.

12.

In 2017, Defendant recruited Plaintiff from his resume posted on Indeed. The specific position Defendant recruited Plaintiff for was a Sales Consultant in the Atlanta based branch.

13.

Defendant sought Plaintiff for employment based on his history of working in Japan for fifteen years, he spoke fluent Japanese, and he had previously worked in Sales with both Toyota and Kia. At the time of his interview with Mr. Fujihara, Plaintiff lived in Venice, Florida.

14.

Defendant's CEO, COO and Secretary, Mr. Fujihara, spoke with Plaintiff about the position. Mr. Fujihara offered Plaintiff a base salary of $35,000 with commissions. Mr. Fujihara told Plaintiff he would earn $100,000 annually with his commissions.

15.

Plaintiff accepted Mr. Fujihara's job offer and relocated from Florida to the Atlanta, Georgia area.

16.

On October 30, 2017, Plaintiff started his career with Defendant.

17.

The Defendant's Atlanta based office housed four or five employees and there was no supervisory manager located at the branch.

18.

Defendant did not provide training for Plaintiff, but he learned Defendant's software and processes by observing his co-worker's.  One co-worker specifically, Katsuyo, assisted Plaintiff with some guidance.

19.

Plaintiff and his co-workers attended company wide meetings via teleconference calls. While on the calls, Plaintiff discovered he was the only American working in the whole company and the other employees were Japanese. There were no African American employees working for the Defendant.

20.

While at work, Plaintiff would speak both Japanese and English with his co-workers.

21.

Plaintiff's duties as a Sales Consultant included recruiting and vetting suitable candidates for  open positions with the Defendant's clients. Once Plaintiff identified a candidate match, Plaintiff would initiate an interview with the client.

22.

Plaintiff's additional job duties included visiting Japanese companies in attempt to engage them in business with Defendant.

23.

Plaintiff's commissions were based on his candidate placement.

24.

Plaintiff performed his job in a diligent and skillful manner.

25.

About six months into his Plaintiff's employment, Defendant hired Kawana "Ted" Tetsuhiro, a new supervisory manager for the Atlanta branch. Mr. Tetsuhiro became Plaintiff's direct supervisor.

26.

With the arrival of Mr. Tetsuhiro, each of Plaintiff's employment candidates would be reviewed by Mr. Tetsuhiro before connecting them with the client.

27.

Plaintiff experienced three, four, and five separate times when the African American pre-vetted and qualified recruits were rejected by Mr. Tetsuhiro, who would make racially discriminatory comments about the African American job applicants, such as, "Black people are no good!" and "Blacks can't do this job!"

28.

Plaintiff expressed his upset about Mr. Tetsuhiro's refusal to place African American candidates directly with Mr. Tetsuhiro, while in the open office space, and in the presence of his co-workers. Plaintiff told Mr. Tetsuhiro he cannot say those things in the U.S., or refuse a candidate because they are Black.

29.

Plaintiff's co-worker, Katsuyo, was present during the open office conversations and also present in a meeting held in the boardroom. Katsuyo witnessed the conversations, between Mr. Tetsuhiro and Plaintiff, and she was aware of the fact that Mr. Tetsuhiro would not place Plaintiff's Black candidates.

30.

Mr. Tetsuhiro demanded that Plaintiff identify all Black candidates on their resumes so that their resumes would not be forwarded to the Defendant's clients.

31.

Mr. Tetsuhiro made it clear that he did not want to place African American candidates, even though in a lot of cases the African American candidates were highly qualified.

32.

Mr. Tetsuhiro's comments were highly offensive and caused major distress to Plaintiff.

33.

On or about June 29, 2018, Plaintiff called the CEO of the Company, Masato Fujihara. and reported the race discrimination ongoing in the Atlanta office.

34.

In Plaintiff's report, he told told Mr. Fujihara that Mr. Tetsuhiro wanted applications of Black candidates identified, and had refused to place qualified candidates based on their race. He expressed that Mr. Tetsuhiro continued to show blatant racism toward African American applicants.

35.

Plaintiff reported to Mr. Fujihara that Mr. Tetsuhiro did not have a "sense of what racism is," and that some of the African American candidates who were highly qualified people did not get the opportunity for placement.

36.

Mr. Tetsuhiro was upset at Plaintiff for his report made to Mr. Fujihara and became hostile toward Plaintiff.

37.

Plaintiff made two or three additional phone calls to Mr. Fujihara, and sent him an email reporting the ongoing racial discrimination in the Atlanta branch. Mr. Fujihara stopped accepting Plaintiff's phone calls.

38.

The Human Resources representative emailed Plaintiff telling him not to call and not to email Mr. Fujihara any more.

39.

The Human Resources representative told Plaintiff his reports had been investigated and no evidence of discrimination had been found.

40.

On July 12, 2018, Human Resources emailed Plaintiff with fictitious claims of poor work performance, and advised Plaintiff that his sales quotas must improve by July 31, 2018.

41.

This email, sent after his report of race discrimination, was the first time Plaintiff's performance was brought into issue in the nine months he was employed.

42.

Further, Defendant had not identified a "sales quota" for Plaintiff. Instead, Plaintiff would earn commission based on his completed placements.

43.

Plaintiff had no prior warnings, and no prior discussion was had regarding any alleged performance issues.

44.

Despite Defendant's sudden claims of poor performance, Plaintiff continued performing his job in a diligent and skillful manner. The Defendant created the

false write up as retaliation for his reports of race discrimination. At all times Plaintiff performed his job without issue as he had done the previous nine months.

45.

On August 6, 2018, just over a month after reporting the unlawful race discrimination, Mr. Fujihara flew to the Atlanta branch and terminated Plaintiff's employment..

46.

Mr. Fujihara told Plaintiff the reason for his termination was failure to meet his sales quota. However, Defendant's excuse is mere pretext for unlawful discrimination and retaliation for reporting the discrimination.

47.

Plaintiff has sustained damages as a result of Defendant's unlawful actions.

## FIRST CAUSE OF ACTION

### (Retaliation in Violation of Section 1981)

48.

Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

49.

Plaintiff engaged in protected conduct under Section 1981 when he reported the race discrimination to his direct manager and again on or about June 29, 2018, when he reported to Defendant's CEO.

50.

Defendants have violated Section 1981 by subjecting Plaintiff to retaliation for his protected complaints and opposition to Mr. Tetsuhiro's discriminatory comments on the basis of race, by, *inter alia*, terminating Plaintiff's employment with the Company.

51.

As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

52.

Defendant's unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure

Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## SECOND CAUSE OF ACTION

### (Race Discrimination in Violation of Section 1981)

53.

Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

54.

Defendant violation Section 1981 by engaging in discriminatory hiring practices based on applicants' race. Indeed, Defendant openly disfavored African American candidates, stating "Blacks can't do this job" and "Black people are no good." Further, Plaintiff was instructed to identify all African American applications so they would not be placed with Defendant's clients.

55.

Defendant's actions are a violation of Section 1981.

56.

As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer monetary

and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

57.

Defendant's unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

<strong><u>PRAYER FOR RELIEF</u></strong>

58.

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A.      A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States;

B.      An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.      An order directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory, retaliatory and/or otherwise unlawful

treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other conduct are eliminated and do not continue to affect Plaintiff;

D.   An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

E.   An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

F.   An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment;

G.    An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

H.    An award of punitive damages;

I.    An award of costs that Plaintiff his incurred in this action as well as plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

J.    Such other and further relief as the Court may deem just and proper.

## Jury Demand

Plaintiff hereby demands a trial by jury.

Respectfully submitted this 2nd day of August, 2022.

 /s/ *Benjamin F. Barrett Jr.*
Benjamin F. Barrett Jr.
GA Bar No: 039586

Ben Barrett Law
1050 Crown Pointe Pkwy, Suite 500
Atlanta, GA 30338
404-845-7449
ben@benbarrettlaw.com

*Attorney for Plaintiff Lopez*